UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAJESH PATEL, CHARULATA PATEL, ROBERT MURPHY, and GEORGIA MURPHY,<br><br>        Plaintiffs,<br><br>    v.<br><br>TRICIA A. CALLIES, RANDALL A. CALLIES, AURORESKY INVESTMENTS LLC, and BOISE REALTY, INC.<br>        Defendants. | Case No. 1:CV-07-474-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it two summary judgment motions. Defendants move for summary judgment on all of plaintiffs' claims, and plaintiffs move for summary judgment on all of defendant Auroresky Investment, LLC's counter-claims. The motions were fully briefed and argued before Judge William F. Downes on January 26, 2010. Before rendering a decision, Judge Downes stayed the case on February 12, 2010. When Judge Downes retired, the case was transferred back to this Court on September 3, 2011. This Court lifted the stay, and the motions are now at issue. For the reasons explained below, the Court will deny defendants' motion and grant plaintiffs' motion.

**Memorandum Decision & Order - 1**

# FACTUAL BACKGROUND

Preliminarily, the Court notes that defendants have failed to comply with the Local Rule requiring submission of a separate statement of undisputed facts. *See* D. Idaho L. Civ. R. 7.1(b)(1); 7.1(c)(2). The Court might be inclined to overlook this failure if defendants' supporting memorandum contained a recitation of facts (with evidentiary citations), but they have not supplied that either. Instead, their three-paragraph Introduction simply refers the Court to its earlier decision granting in part and denying in part defendants' motions for judgment on the pleading. *See* Dkt. 103. Defendants assert that the "background of this case has been substantially set forth" in that order. *See Defendants' Opening Brief (Dkt. No. 136-1)* at p. 1.

The careless treatment of the evidence continues at times in the argument section, where defendants often fail to cite any evidence to support factual assertions. Defendants also have a habit of referring the Court to an entire affidavit along with hundreds of pages of exhibits to support a particular fact.[1] Plaintiffs do a better job, although they are not always careful with the evidence either; for example, they cite hundreds of pages of multiple deposition transcripts to support a particular fact.

The upshot is that the Court is left to scour the record on its own to determine precisely which facts the parties rely upon and whether there is evidentiary support for

---

[1] To be clear, the Court does not fault the parties for the mere act of filing voluminous exhibits; such filings are often necessary in complex litigations. The problem is defendants' failures to direct the Court to specific documents or provisions. Relatedly, defendants often fail to fully explain or synthesize voluminous exhibits.

those facts. Plus, the file in this case is a thick one – and the record voluminous. The parties have submitted multiple affidavits, hundreds of pages of deposition transcripts, and thousands of pages of exhibits. (Most exhibits are scanned into the Court's electronic system, but the Court's records also contain two large expandable files stuffed with exhibits that were too voluminous to scan. *See Dkt. Nos. 137, 140, 141*.)

Under these circumstances, the Court is tempted to simply deny the motion because defendants failed to properly support the factual assertions made in their motion, thus failing to demonstrate that the underlying material facts are undisputed. *Cf. Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026 (9th Cir. 2001) (discussing obligations of a party opposing summary judgment, and noting that "[i]t is absurdly difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for such evidence"). However, in the interests of deciding motions on their merits and moving this case along, the Court will do its best with the submissions before it.[2]

This controversy arises out of plaintiffs' investment in a commercial real estate development in Boise, Idaho.[3] The project – a six-building complex on Five Mile Road –

---

[2] Part of the Court's reluctance to simply deny both motions, is that there has been an unconscionable delay in the resolution of these motions. The Court is not aware of precisely why the action was stayed or whether the stay was really necessary. However, as soon as it became apparent to the undersigned that the stay either should not have been issued or was no longer needed, the stay was lifted and efforts were taken to issue a decision as quickly as possible. To the extent that this delay has adversely impacted the parties, the Court offers its apology.

[3] These factual findings are less detailed than those the Court typically prepares for the reasons discussed. Further, portions of this factual statement are taken directly from the Court's January 29, 2009 Order Granting in Part and Denying in Part Defendants' Motions for Judgment on the Pleading. Dkt. 103. As noted, Defendants relied on this factual statement in their moving papers, and Plaintiffs did not object.

**Memorandum Decision & Order - 3**

was to be administered and developed by defendant Tricia Callies, a real estate agent, through a limited liability company, defendant Auroresky Investments. Auroresky was to hire Ms. Callies' husband, defendant Randall Callies, to construct the six buildings.

The plaintiffs are two couples – Rajesh and Charulata Patel and Robert and Georgia Murphy. Each couple contributed $125,000 to Auroresky to become members of the LLC. More specifically, each couple was to own 12.5% of the company, for a total of a 25% interest between the two couples. In exchange, each couple was "guaranteed" the return of their initial investment, as well as the distribution of an additional flat $125,000 from the profits of the project. Plaintiffs assert that each couple was to receive its guaranteed $250,000 payment before any profits were distributed to any other recipient. Plaintiffs were also to receive a security interest in the land to back their investment in Auroresky. Ultimately, plaintiffs did not receive a valid security interest in the property and they lost their entire investment.

In any event, before plaintiffs invested in Auroresky in March and April 2006, the Callies say they spent roughly $178,000 of their own money developing the project. *See First T. Callies Aff.* ¶ 2, Dkt. 137.[4] Plaintiffs contend they were unaware that Auroresky owed any money to the Callies at the time they made their investment.

---

[4] To support her assertion that the Callies spent this money on the project, Ms. Callies refers to over 150 pages of financial documents, asserting, "Bates Nos. 285-437 document the costs incurred on this project by Randy Callies and affiant." The referenced documents are a stack of bank statements, check register reports, canceled checks, and invoices. Callies does not summarize these records or otherwise explain how they document the asserted $178,000 expenditure. And the documents are not self-explanatory; among other things, many of the canceled checks are miniature copies that are essentially unreadable.

**Memorandum Decision & Order - 4**

Defendants indicate that emails Ms. Callies sent to the Murphys beforehand "show[] that on March 31, 2006, plaintiffs were advised of encumbrances . . . ." *Defendant's Opening Brief (Dkt. No. 136-1)* at p. 10. In particular, defendants point to a spreadsheet, dated March 10, 2006, entitled "AuroreSky Land Purchase Projected Cash Requirements Entitlement Process." *First T. Callies Affidavit (Dkt. No. 137)*, Ex. 1 thereto, at 183. The spreadsheet sets forth land costs, closing costs, loan fees, and fees for "arch/eng/planning/re-zone." *Id.* There is no specific mention in that document, however, of the $178,000 the Callies say they had already spent on the project. *See id.* In her deposition, Ms. Callies indicated she did not expressly inform Plaintiffs of money she had already spent because Plaintiffs did not ask for the information and the "tax returns would have reflected" it. *See Plaintiffs' Brief (Dkt No. 159)* at p. 18 (quoting T. Callies Deposition).

## LEGAL STANDARD

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988). And a court is not obligated to take the non-movant's version of events as true when the account is blatantly contradicted by video evidence. *Scott v. Harris,* 550 U.S. 372, 378-81 (2007).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some

**Memorandum Decision & Order - 6**

reason to deny a motion for summary judgment." *Carmen,* 237 F.3d at 1029.  Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## ANALYSIS

**Fraud**

The Court turns first to defendants' motion for summary judgment. Defendants assert that Plaintiffs' ten claims can be narrowed to just two: "(1) fraud; and (2) theft." *Defendants' Opening Brief (Dkt. No. 136-1)* at p. 2; *see also Defendants' Reply Brief (Dkt. No. 174)* at pp. 1-2. Defendants then focus almost totally on fraud. They first set out the familiar elements of that tort, which are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth; (8) plaintiff's right to rely thereon; and (9) consequent and proximate injury. *See, e.g., Fed. Land Bank of Spokane v. Parsons*, 777 P.2d 1218, 1222 (Idaho 1989).

Defendants argue that there is no fraud here because they spent all of Plaintiffs' investment monies on the project. *Id.* at 2-3. In other words, Defendants see this motion largely as an accounting exercise – if they prove that they spent all Plaintiffs' monies for legitimate project expenses (and did not simply take the money for themselves), then Plaintiffs' fraud claim necessarily fails.

**Memorandum Decision & Order - 7**

But plaintiffs' central allegation is that defendants misrepresented Auroresky's financial condition in the first place. That is, plaintiffs contend the Callies told them Auroresky did not have any pre-existing debts, and that they relied on this fact when they decided to inject $250,000 into the project. Plaintiffs assert that if they had known Auroresky's true financial condition – which the Callies concealed from them – they would not have invested. And plaintiffs correctly point out that silence, as well as affirmative misrepresentations, may form the basis of a fraud claim. *See, e.g., Sowards v. Rathbun*, 8 P.3d 1245, 1250 (Idaho 2000) (holding that "[s]ilence may constitute a fraud when a duty to disclose exists"). The focus, therefore, is not whether the money was spent on legitimate project expenses, but on what defendants told the plaintiffs (or concealed from them) before plaintiffs invested.

Defendants have put forth evidence showing that at least one plaintiff, Robert Murphy, was aware of mortgage debt on the property and was further aware that Auroresky would repay the Callies for land costs. *See Defendants' Reply Brief (Dkt. No. 174)* at p. 5 (asserting that Murphy understood "there were first and second deeds of trust on the property") (citing R. Murphy Dep. at 66-67). But they have not shown that all plaintiffs were aware of this debt. Further, there is no evidence that the Callies told plaintiffs that in addition to "land costs," the Callies believed Auroresky owed them additional monies. Defendants concede that not all of the money they put into the project *before* plaintiffs invested was spent on purchasing the land. *See First T. Callies Affidavit (Dkt. No. 137)* at ¶ 1 (Callies generally testified that roughly $178,000 was spent on

Memorandum Decision & Order - 8

"*among other things*, . . . purchasing the land and in designing the infrastructure and buildings that would ultimately comprise the project.") (emphasis added); *see also Plaintiffs' Response Brief (Dkt. No. 159)* at p. 18 (quoting Callies' deposition testimony that she did not disclose $141,000 in expenditures because plaintiffs did not ask).

The Callies assert that they later put more of their own money into Auroresky, but this does not preclude plaintiffs' fraud claim. Plaintiffs allege that *at the time they invested in the project*, they had been misled as to the actual financial condition of the LLC. The fact that defendants later may have injected more of their own money into the project does not prevent plaintiffs from demonstrating that they would not have invested in the first place.

In short, defendants have not shown they are entitled to summary judgment of plaintiffs' fraud claim. The only case they cite to support their theory – *Federal Land Bank of Spokane v. Parson*, 777 P.2d 1218 (Idaho Ct. App. 1989) – is distinguishable. In *Parson*, a bank judicially foreclosed a mortgage on farmland after the plaintiffs repeatedly failed to make loan payments and pay taxes. *Id.* at 1220. Plaintiffs counterclaimed for fraud, asserting, among other things, that the bank did not properly disburse loan proceeds. *Id.* at 1222. The bank, however, provided proof of the underlying obligations and the fraud claim failed. *Id.*

*Parson* is not controlling. Although plaintiffs claim defendants misused funds, their central claim is that the Callies failed to disclose Auroresky's true financial condition to them at the outset. As a result, there are triable issues of fact that prevent

Memorandum Decision & Order - 9

summary judgment on the fraud claim.

Having determined that the fraud claim is not subject to summary adjudication, the Court will not address defendants' assertions that they did not make other misrepresentations to the plaintiffs – including, for example, defendants' assertion that they did not misrepresent the true owner of the property to plaintiffs.

Finally, the Court rejects defendants' assertion that plaintiffs have improperly relied on newly invented allegations of fraud to withstand this summary judgment motion. *See Defendants' Reply Brief (Dkt. No. 174)* at p. 4. The Court has found a disputed issue of fact regarding a misrepresentation directly alleged in the complaint. Specifically, plaintiffs alleged that "AuroreSky Investments, LLC was a new startup entity with no pre-existing debts or liabilities. . . . In fact, . . . the Callies had encumbered the Property with development expenses and the Washington Federal Savings debt in the amount of $184,000." *First Amended Compl.* ¶ 73.1. Although all plaintiffs may not be able to prove they were unaware of mortgage debt on the land, there remain disputed issues of fact as to the other alleged expenses. The Court therefore denies the motion for summary adjudication of the fraud claim.

**Other Claims**

Defendants did not meaningfully brief any claims other than fraud. Their motion hinged on the assertion that if the fraud claim failed, the entire complaint failed. The

Court will not, therefore, undertake an independent analysis of plaintiffs' other claims.[5]

The defendants' motion for summary judgment of all claims will be denied.

**Plaintiff's Motion for Summary Judgment**

The Court now turns to plaintiffs' motion for summary judgment on Auroresky's counterclaim. Auroresky alleges seven claims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) tortious interference with contract; (4) "breach of fiduciary and statutory duties and self-dealing"; (5) interference with prospective economic advantage; (6) common law conspiracy; and (7) "reckless and willful misconduct." *Answer and Counterclaim (Dkt. No. 60)* at pp. 27-33. Plaintiffs seek summary judgment of all these claims.

The background for these claims is related to the facts set forth above, but involves plaintiffs' separate decision to purchase buildings that were to be constructed on the six-building commercial development on Five Mile Road. Shortly after plaintiffs purchased their interest in Auroresky – and separate and apart from that investment – plaintiffs signed two separate contracts wherein each couple agreed to purchase one of the six buildings. Plaintiffs' friends and relatives – Scott and Corrina Condon, Louis Pace, Sr., and Minesh Patel – also signed contracts to purchase buildings.

---

[5] Defendants' briefing mentioned "theft," but did not articulate the factual or legal authorities that would support summary adjudication of such a claim. Although the reply brief elaborates on theft somewhat, *see Reply Brief (Dkt. No. 174)* at pp. 13-16, the defendants failed to point to undisputed facts showing they are entitled to summary adjudication of any theft claim.

Auroresky alleges that all five parties breached their purchase contracts. It further alleges that the Murphys tortiously interfered with Auroresky's dealings with Pace, Minesh Patel, and the Condons by convincing those parties to breach their purchase contracts. *Answer & Counterclaim (Dkt. No. 60)* at ¶¶ 26, 41-43.

In their pending motion, plaintiffs argue that Auroresky's counterclaim fails because all the purchase contracts were unenforceable. Auroresky does not oppose plaintiffs' motion on five of the seven claims, stating: "While [Auroresky] do[es] not accept plaintiffs' arguments . . . [it] do[es] agree that Counts One through Three, Five and Seven . . . should be dismissed." *Auroresky's Response Brief (Dkt. No. 148)* at p. 1. This leaves just two claims – breach of fiduciary duty and conspiracy.

**Auroresky's Reliance on New Facts**

These claims are easily resolved because in its summary judgment opposition, Auroresky relies on a new factual theory to support these claims. Although the Court could theoretically treat Auroresky's opposition as a motion to amend the counterclaim, it would deny the motion at this late stage. *Cf. Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006) (where defendant moved for summary judgment on statute of limitations ground, plaintiff could not oppose it by raising grounds for tolling that had not been pled in complaint). The deadline for filing amended pleadings has passed long ago, and Auroresky has made no attempt to show good cause for such a late amendment. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) (good cause required for late-filed motion to amend).

**Memorandum Decision & Order - 12**

A comparison of the counterclaim with Auroresky's opposition demonstrates the shift in factual theories. In the counterclaim, Auroresky's central factual allegations were: (1) that plaintiffs breached their purchase contracts; and (2) plaintiffs convinced their friends and relatives to breach their purchase contracts with Auroresky. *See Answer & Counterclaim (Dkt. No. 60)* at pp. 24-27. But Auroresky drops these allegations and asserts new ones in opposing plaintiffs' motion.

For example, Auroresky cites evidence that plaintiffs recruited buyers (Pace, the Condons, and M. Patel) who were unsuitable in the first place. Here, Auroresky contends that "timing" was critically important to some buyers and that plaintiffs "either knew or should have known that the contracts with their relatives and associates would fail long before they actually did and provided no warning to Auoresky or the Callies of that fact." *Auroresky's Response Brief (Dkt. No. 148)* at p. 3.

Auroresky also argues that the lenders who pre-qualified Pace, the Condons, and the Patels did not conduct sufficient due diligence before agreeing to lend money. Auroresky asserts that the Murphy plaintiffs must have known this, although Auroresky does not assert that the purchase contracts failed due to any actual financial problems with these individuals. *See id.* at pp. 4-9. As a final example, Auroresky alleges that plaintiffs interfered with Auroresky's settlement of an unrelated claim with Scott Brown – an allegation not contained in the most liberal reading of Auroresky's counterclaim.

The Court will not permit Auroresky to rely on new factual allegations this late into the litigation. Under the facts pled in the counterclaim, there are no triable issues of fact as to any claims – including the breach of fiduciary duty and conspiracy claim.

**Idaho Law Regarding LLC Members' Fiduciary Duties**

Auroresky's breach of fiduciary duty claim fails in any event because plaintiffs are non-managing, minority members of Auroresky. Under Idaho's prior LLC Act, plaintiffs do not owe fiduciary duties to the LLC because Auroresky is a "manager-managed" LLC, with defendant Tricia Callies serving as its manager.[6] *See* Idaho Code §§ 53-621, 53-622 (2006); *Second Amended LLC Agreement* (Dkt. No. 137-1).[7]

The pertinent provision of the prior LLC Act states:

> One who is a member of a limited liability company in which management is vested in managers pursuant to section 53-621, Idaho Code, and who is not a manager shall have no duties to the limited liability company or to the other members solely by reason of acting in the capacity of a member.

---

[6] In March 2008, Idaho revised its LLC Act, but the prior act applies here because the conduct at issue occurred before July 2010. *See* Idaho Code § 30-6-1104(2) (new act applies to previously existing LLCs beginning July 1, 2010). Regardless, the result under the new act is the same as under the prior act. *See* Idaho Code § 30-6-409(7) (non-members in manager-managed LLCs do not owe fiduciary duties to the LLC or other members).

[7] The relevant provision states:

3.01 <u>Management</u>. The Members have elected to manage the LLC as follows: [¶] The Members shall elect Tricia Ann Callies as Manager and can remove the Manager only by unanimous vote. The Manager shall have the authority to take all necessary and proper actions in order to conduct the business of the LLC, as set out in Article 1.02. The Manager can take any appropriate action on behalf of the LLC, such as signing checks, executing leases, and signing loan documents.

Idaho Code § 53-622(3) (2006).

Auroresky argues that plaintiffs owe it the duty of a fiduciary, citing *Bushi v. Sage Health Care, PLLC*, 203 P.3d 694 (Idaho 2009). *Bushi,* however, dealt with a member-managed LLC, and held that members of such LLCs do indeed owe fiduciary duties to one another. *See id.* at 696, 699 (holding that "[w]e conclude that under Idaho's original LLC act, members of an LLC owe one another fiduciary duties"). *Bushi* is inapplicable here because Auroresky is not a member-managed LLC.

This dispenses with the fiduciary duty claim. The obligations Auroresky complained of in its counterclaim were contractual in nature. The contract claims are gone and Auroresky cannot recover on a fiduciary theory. As one court put it: "Had defendants wanted everyone to enjoy a red rose of fiduciary duty, they should not have planted white roses of contractual obligations and now ask me to paint them over." *Kuroda v. SPJS Holdings, L.L.C.*, 2010 WL 925853, at *8 (Del. Ch. Mar. 16, 2010) (unpublished disposition) (citing Lewis Carroll, *Alice's Adventures in Wonderland and Through the Looking Glass* 69 (Hugh Haughton ed., Penguin Books 2010) (1865).

The Court will grant plaintiffs' motion for summary judgment of the breach of fiduciary duty claim. The Court will also summarily adjudicate the conspiracy claim, as it depends totally on the existence of the fiduciary duty claim. *See Auroresky's Response Brief (Dkt. No. 148)* at p. 15 (arguing that plaintiffs conspired to breach their fiduciary duties).

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that defendants' motion for summary judgment (docket no. 136) is DENIED.

IT IS FURTHER ORDERED, that plaintiffs and counter-defendants' motion for summary judgment (docket no. 138) is GRANTED.

IT IS FURTHER ORDERED, that the Court's clerk (Sherri O'Larey at 208-334-1473) set a scheduling conference where a trial date can be set.

DATED: **September 27, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge